Max JOHNSON, d/b/a Max Johnson Painting Company, Appellee,

v.

E. V. COX CONSTRUCTION COMPANY, and Mid–Continent Casualty Company, Appellants.

No. 51838.

Court of Appeals of Oklahoma, Division No. 2.

June 10, 1980.

Released for Publication by Order of Court of Appeals Aug. 7, 1980.

Winfrey D. Houston, Fitzgerald, Houston & Worthington, Stillwater, for appellee.

W. Keith Thomas, Thomas, Hert, Anderson & Baker, Stillwater, for appellants.

BRIGHTMIRE, Presiding Judge.

Defendant E. V. Cox Construction Company as general contractor for the construction of the Agricultural Center Office Building at Oklahoma State University refused to pay its painting subcontractor, Max Johnson, $4,462.41–the claimed amount due–because, it contended, it owed only $184.52 under the contract. At trial the jury concluded otherwise and found Johnson was entitled to the full amount he asked for. Judgment was entered for this together with an attorney's fee and pre-judgment interest. Cox appeals saying: (1) the verdict is "too large"; (2) its motion for judgment notwithstanding the verdict should have been sustained or else a new trial should have been granted.

I

The operational facts from which this controversy evolved are these. Johnson's subcontract, an A. G. C. standard form executed June 4, 1975, obligated him to furnish materials and labor necessary to accomplish "[a]ll Painting" required by the prime contract including several "add alternates" selected by the owner among which were alternates 9A and 9B calling for installation of 42 cabinet units. Besides "painting" the only other things contractually required of Johnson were "the [p]rotection of all adjacent surfaces", and "[c]lean up and removal of all debris resulting from the work." This he agreed to do for $9,916.

Later, on October 16, 1975, Cox notified Johnson that O. S. U. decided to delete alternates 9A and 9B from the contract. Consequently on December 9, 1975, change order No. 1 was executed deducting $2,432 from the Johnson agreement leaving a total contract price of $7,484.

In February, 1976, Johnson was notified that the project was ready for paint and he began performance. He soon discovered certain surfaces to be painted were not prepared in accordance with the requirements of the plans and specifications so he brought this to the attention of Robert Blake, Cox's project superintendent, and on February 26, 1976, Blake executed an "Additional Work Authorization" allowing Johnson to caulk "[b]locks and [m]etal jambs throughout 1st and 2nd floor . . . at cost plus 20%. . . ."

In March, 1976, change order No. 2 was executed adding a cabinet and sink at a cost of $138.42. And finally on May 10, 1976, Blake signed a second "Additional Work Authorization" permitting Johnson to furnish the labor and materials necessary for "taping, floating, sanding and cleaning sheetrock mud from bricks and other sur-

faces" at a price of cost plus 20 percent. Billing for the two authorizations came to $1,986.61.

In June, Cox installed 21 cabinets and Blake instructed Johnson to paint them. Johnson said he would but first he wanted an additional work authorization executed because, as he saw it, the first change order deleted from the subcontract the only cabinets he was to paint and they, therefore, were not included in his contract. This view of his contract differed from that of Cox and O. S. U. According to the latter the base contract included the 21 cabinets and the two add alternates, 9A and 9B, contemplated 42 additional cabinets which were the ones eliminated by change order No. 1–not the 21 in question. After failing, in two attempts, to get a change order for the 21 cabinets from the project manager, William Kaiser, Johnson finally got an "Additional Work Authorization" signed by Blake sanctioning the painting of them for an add on price of $1,012.60.

To recapitulate then, Johnson's final statement to Cox, dated August 23, 1976, was constructed in the following manner. From the original contract price of $9,916 was deducted $2,432 (for the deleted alternates 9A and 9B). To this difference of $7,484 was added $138.42 for change order No. 2 and $2,999.21 for the amount of the three additional work authorizations for a total modified contract sum of $10,621.63. From this was deducted $6,159.22 the amount of the progress payments during the course of the work leaving a balance due of $4,462.41.

Cox responded with a letter dated November 10, 1976, saying it owed only $184.52–a figure it arrived at by deducting change order No. 1 ($2,432) from $9,916, adding change order No. 2 ($138.42) for a new contract price of $7,622.42. Against this was charged $6,159.22 for payments made and a "back charge" of $1,278.68–for the cost of refinishing a number of doors

which had been unacceptable to the owner because of scratch marks–leaving a balance due of $184.52.

Johnson rejected the back charge and advised Cox in a letter six days later that the doors were not damaged by his men and before staining them the gouges and scratches were brought to the attention of Cox's superintendent and the architect who instructed Johnson to go ahead and stain the doors notwithstanding.

Settlement was not reached and Johnson filed this lawsuit. In its answer Cox denied authorizing Johnson to do any additional work and cross–petitioned for $1,278.68, the amount of damage it said it sustained as a result of the paint contractor's failure to refinish the unacceptable doors.

## II

Cox's first assignment of error–that the judgment is excessive–focuses on two intermixed questions of law and fact the unfavorable resolution of which at the trial court level is challenged as being contrary to the evidence. The first question relates to Johnson's extra charge for painting 21 cabinets. Central to Cox's theory is the contention that the item was included in the original subcontract and, contrary to Johnson's insistence, was unrelated to add alternates 9A and 9B (42 cabinets) later deleted by change order No. 1.

If this were all there was to the matter we would have to side with Cox because it seems reasonably clear that Johnson was in error.[1] But this is not all there is to it. Johnson remained steadfast in his mistaken belief and declined to paint the 21 cabinets unless, as we mentioned earlier, given an additional work authorization. Blake finally did authorize the work and Cox admits this. But, says the general contractor, he was without authority to do so under the

---

1. The original drawing contained layout and details for the 21 cabinets. After the drawing had been blue-printed the architect wrote on the cabinet elevation detail drawing these words: "REF: SPECS ‹PART OF ALT. No. 9›." It is this language that Johnson says led him to believe the layout plans–showing 21 cabinets–pertained only to alternate No. 9 consisting of 42 cabinets. No other bidder seems to have so interpreted the drawings.

express terms of the subcontract,[2] and for this reason it is not liable either for the cabinet finishing or for the work done pursuant to the other two work authorizations executed by Blake.

Johnson's reply to this defense was that Cox is estopped to rely on the contract proscription and to deny Blake's authority because it acquiesced in all three authorizations and accepted the benefits arising from them, thus it waived the contractual circumscription and ratified Blake's unauthorized authorization. This then became the ultimate issue to be resolved with regard to both the cabinet and extra work dispute, and the jury decided it against Cox.

■ Cox's attack on the judgment ignores this issue and emphasizes its black letter contractual rights. Strategically this helps neither itself nor the court. Contracting parties can expressly or implicitly waive performance violations and assent to contractually proscribed procedures.[3] This is what the jury evidently found happened here. The evidence supports the finding.

### III

The second basis for reversal advanced is the refusal of the trial court to direct a verdict for Cox or to later grant it a judgment notwithstanding the jury's verdict.

It is obvious that the conclusion we have reached with regard to Cox's first contention destroys the foundation for its second one.

### IV

The third point urged by Cox is an evidentiary one—that the trial court wrongly allowed Johnson to demonstrate to the jury the procedures he used in staining and sealing the doors that had to be refinished. The presentation was made as rebuttal to defense evidence regarding the necessity of incurring expenses for labor and materials correcting work done by Johnson. The thrust of the complaint is that the demonstration "was not relevant, . . . was of no real assistance to the [jury]," was not "highly probative," and "it [was] highly unlikely that . . . [it] compared favorably with the conditions, materials and labor actually utilized in performing" the job. For these reasons, Cox says, the error requires the granting of a new trial.

■ Not every mistake made by a trial court requires a new trial. There must be a showing of prejudice, or a departure so far from the permissible as to import substantial impairment of a litigant's fundamental right to a fair and impartial trial and a consequential defeat for justice. Here the complaint focuses merely on the irrelevance and impotence of the wood finishing demonstration. Nothing is said in Cox's brief about it having had a prejudicial effect. The defendant does add, in its conclusion, the word "inflammatory" to the other terms used to characterize the evidence— "incompetent, irrelevant, immaterial"—but the basis for this generalization, apparently, is drawn from the earlier mentioned criticism of the demonstration. The difficulty with this notion is that the inference is a non sequitur. If indeed the trial court, during a preliminary discussion, opined that the demonstration was irrelevant and of no real assistance to the jury, then he should have, of course, excluded it. But the fact that he did not do so does not compel reversal. Frankly, we do not think it likely that staining and sealing some wood in the presence of the jury either inflamed or prejudiced them merely because it was irrelevant or unhelpful in resolving the issues.

■ It appears to us from an examination of the record that substantial justice was done. The judgment appealed is affirmed. Costs of this appeal, which shall

---

**2.** Numbered paragraph 15 specifies that no charges for extra work or material will be recognized or paid by prime contractor "unless agreed to in writing by [prime] Contractor. . . . [A]nd no superintendent, foreman or other employee of Contractor has or shall have any right or authority to modify, add to or change this sub-contract or execute any written order or give any written directions for Contractor."

**3.** *See E. V. Cox Constr. Co. v. Brookline Assocs.*, Okl.Ct.App., 604 P.2d 867, 871 (1979).

include an attorney's fee of $1,800, are assessed against Cox.

Affirmed.

BACON and NEPTUNE, JJ., concur.